NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0455n.06

No. 24-2122

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 08, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| LENTO LAW GROUP, P.C., | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| LADEL LEWIS; LINDA ANN POHLY, | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | OPINION |
|  | ) | |

Before: KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Ladel Lewis and Linda Ann Pohly posted statements in a Facebook group criticizing Lento Law Group. So Lento sued Lewis and Pohly for defamation. The district court dismissed Lento's claims against Lewis and Pohly under Rule 12(b)(6). Because we hold that the statements constitute opinions and are not actionable as defamation, we affirm.

**BACKGROUND**

This case arises on a motion to dismiss, so we recount the facts as alleged in the complaint. *See Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 886 (6th Cir. 2025). Lento Law Group operates in Flint, Michigan, and has represented and been affiliated with some members of the Flint City Council. Councilwomen Jerri Winfrey-Carter and Tonya Burns are supporters of Lento's business in Flint. To show their support, they purchased custom Lento shirts that were embroidered with their names. Like many matters involving the Flint City Council, the fact that Councilwomen

Winfrey-Carter and Burns had personalized Lento shirts became a topic of discussion in the Facebook group "Flint Politics."

Defendant Ladel Lewis is also a member of the Flint City Council. She is a political opponent of Councilwomen Winfrey-Carter and Burns, and by extension, an opponent of Lento. In August 2023, Councilwoman Lewis posted a photo in the Flint Politics group showing Councilwomen Winfrey-Carter and Burns wearing their Lento shirts at a public festival where Lento had purchased a booth for marketing. Alongside the photo, the post referenced two Michigan statutes prohibiting gifts to public officials and a portion of the Flint City Charter prohibiting bribing public officials, and then questioned Councilwomen Winfrey-Carter and Burns's ethics. Specifically, Councilwoman Lewis captioned the Facebook post as follows:

> According to the 6th Ward's post defining gifts, it appears that these fancy personalized Lento shirts qualify. Were they more than $25? Can you represent the city and the law firm in litigation with the city at the same time? Is that affecting their votes? Is this why they are not voting to give the residents ARPA dollars? Looks like they are more loyal to Lento than the residents of the City of Flint.

Complaint, R.1, PageID 5.

Councilwoman Lewis's post in the Flint Politics group was not the only commentary on Lento's ties to the Flint City Council. In September 2023, defendant Linda Ann Pohly also chimed in. In response to a comment by Rennie Lee, who was initially a named defendant in this suit but has since been voluntarily dismissed, Pohly criticized Lento's motives for attending Flint City Council meetings. The post reads:

> **Rennie Lee**: So is the Lento Group attending Flint Council meetings looking for ways to set themselves the ability to sue the city? It's sad that [city council member] Eric Mays is using his go fund me money to pay attorneys to sue Flint. That's just grimy. I'm praying they request attorneys fees and court cost[s] for these frivolous lawsuits.

> **Linda Pohly**: **Rennie Lee** yes, that is why they are there. We don't know for sure who is funding these lawsuits, but from looking at the Go Fund Me account, there is not enough money to pay for all of this litigation. I am sure at least some of the money is coming from somewhere else.

*Id.* at PageID 8.

Based on these posts, Lento sued Councilwoman Lewis and Pohly for defamation. The district court dismissed Lento's claims because it concluded that the statements as alleged in Lento's complaint were not actionable as defamation. Lento timely appealed.[1]

## ANALYSIS

We review de novo the dismissal of a complaint under Rule 12(b)(6). *Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024). We accept plausible factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Lento must allege sufficient facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 555, 570. Because this case arises on diversity jurisdiction, we apply Michigan substantive law to determine whether Lento has pled legally sufficient facts to state defamation claims. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 170 (6th Cir. 2005).

Under Michigan law, a defamation claim has four elements: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the

---

[1] We asked the parties to brief our jurisdiction at this stage given Lento's voluntary dismissal of defendant Florenda Lee-Hall, a/k/a Rennie Lee. Because Lento has explicitly disavowed any future claims based on Rennie Lee's statement, we are confident that we have jurisdiction over this appeal under 28 U.S.C. § 1291. *See Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 334 (6th Cir. 2022).

statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010).

We decide this case on the first element—the requirement that a statement be defamatory.[2] Whether the statements at issue are capable of defamatory meaning is a question of law that we review de novo. *Sarkar v. Doe*, 897 N.W.2d 207, 220 (Mich. Ct. App. 2016); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020). A statement is defamatory if it tends to "harm the reputation" of the plaintiff and lowers their "estimation [in] the community" or deters third parties from "associating or dealing" with them. *Smith*, 793 N.W.2d at 540 (citation omitted). Crucially, allegedly defamatory statements "must assert facts that are provable as false." *Sarkar*, 897 N.W.2d at 220 (citation omitted). Statements of opinion which "cannot be reasonably interpreted as stating actual facts about the plaintiff" are not actionable as defamation. *Ireland v. Edwards*, 584 N.W.2d 632, 636 (Mich. Ct. App. 1998); *see also Daoust v. Reid*, No. 361405, 2023 WL 324409, at *8 (Mich. Ct. App. Jan. 19, 2023). Opinions may be defamatory when they imply an assertion of objective facts. *Smith*, 793 N.W.2d at 548–49. But we interpret statements that allegedly imply facts in context, including the forum in which they were made. *Ghanam v. Does*, 845 N.W.2d 128, 144 (Mich. Ct. App. 2014). Even statements of opinion that are designed to be highly offensive are not actionable as defamation unless they assert or imply factual truth. *Id.*

I.      **Context**

Before we analyze the particular language of each statement, we consider at the outset the nature and context of the forum: the Flint Politics Facebook group. In *Ghanam*, the Michigan Court

---

[2] Because we resolve the case on this element, we decline to reach Pohly's argument that Lento has become a limited-purpose public figure and is therefore subjected to a heightened standard for defamation.

of Appeals explained that many posts on internet forums are not actionable as defamation. 845

N.W.2d at 144. The court stated:

> Ranked in terms of reliability, there is a spectrum of sources on the internet. For example, chat rooms and blogs are generally not as reliable as the Wall Street Journal Online. Blogs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely.

*Id.* (citation omitted). When the forum and context of a statement indicates unreliability, Michigan

courts generally hold that a viewer cannot reasonably understand the statement as asserting

provable facts instead of expressing "rhetorical hyperbole." *Hope-Jackson v. Washington*, 877

N.W.2d 736, 747 (Mich. Ct. App. 2015) (citation omitted). Applying this principle in the context

of the internet, *Ghanam* held that anonymous posts on a message board were not defamatory

because no reasonable reader would understand them in context as asserting facts. 845 N.W.2d at

144–46.

Here, the nature of the forum weighs for concluding that Councilwoman Lewis's and

Pohly's posts could not reasonably be interpreted as asserting provable fact. This case falls well

within *Ghanam*'s general principle that websites like Facebook, and particularly Facebook groups

devoted to political discussion, "tend to be vehicles for the expression of opinions" and generally

are not "a source of facts or data upon which a reasonable person would rely." *Id.* at 144 (citation

omitted).

Lento argues that *Ghanam* is distinguishable because the statements in that case were made

anonymously. We disagree. While anonymity factors into reliability, the fact that the poster in

*Ghanam* was anonymous does not dispel the court's explanation that internet forums designed for

sharing personal opinions are generally not reliable sources of information. *See id.* at 144–45.

Moreover, the Michigan Court of Appeals has explained since *Ghanam* that "ordinary consumers

of social media generally understand that statements made in online fora are frequently not intended as assertions of fact even when framed as assertions of fact." *Redmond v. Heller*, 957 N.W.2d 357, 374 (Mich. Ct. App. 2020). Facebook posts with a named author may sometimes be more reliable than anonymous posts, but named authorship alone does not render them reliable sources of information. With this understanding of the forum, we examine each of the alleged defamatory statements in turn.

## II.    Councilwoman Lewis's Statement

We hold that Councilwoman Lewis's statement regarding the Lento shirts is not actionable as defamation. Lento contends that the "unambiguous implication of the post is that [Lento] engaged in illegally providing gifts to public officials." Appellant Br. at 7. But particularly in light of the forum, no reasonable viewer could interpret Councilwoman Lewis's post as asserting or implying factual truth. Two key characteristics of the post inform our analysis. *First*, the post's precise language clarifies that the statement is an opinion, rather than an assertion of provable fact. *Second*, the post provides the factual basis for its interpretation, which generally signals a nonactionable opinion under Michigan law.

To start, the precise language of Councilwoman Lewis's post shows that she was not implying factual truth. Consider the first sentence: "According to the 6th Ward's post defining gifts, *it appears* that these fancy personalized Lento shirts qualify." Complaint, R.1, PageID 5 (emphasis added). On its face, this is a suggested interpretation of a guideline defining gifts, not a fact. The next four sentences of Councilwoman Lewis's post do not assert facts, rather, they pose questions: "Were [the shirts] more than $25? Can you represent the city and the law firm in litigation with the city at the same time? Is that affecting their votes? Is this why they are not voting to give the residents ARPA dollars?" *Id.* Although not dispositive, phrasing the statements as

questions in this context indicates that Councilwoman Lewis was opining on the matter and inviting readers to draw their own conclusions. *See Smith*, 793 N.W.2d at 548–49. From these questions, a reasonable reader would understand the post as criticizing Councilwomen Winfrey-Carter and Burns by suggesting their relationship with Lento makes them biased. Finally, the last sentence in Councilwoman Lewis's post is a straightforward statement of opinion: "Looks like [Winfrey-Carter and Burns] are more loyal to Lento than the residents of the City of Flint." Complaint, R.1, PageID 5. A personal assessment of loyalty like this cannot reasonably be interpreted as an assertion of fact. *See Hantz Grp., Inc. v. Haney*, No. 292954, 2010 WL 4864812, at *6 (Mich. Ct. App. Nov. 30, 2010) (holding that a subjective assessment of another person's behavior is not an assertion of fact).

Next, Councilwoman Lewis's post interprets the photo of Councilwomen Winfrey-Carter and Burns wearing their personalized shirts. Under Michigan law, a personal interpretation of "available information constitutes [an] opinion" and "is not actionable as defamation." *Knutson v. Gassert*, No. 361675, 2023 WL 5988457, at *5 (Mich. Ct. App. Sept. 14, 2023). Councilwoman Lewis shared the photo and stated: "[I]t appears that these fancy personalized Lento shirts qualify [as gifts]." Complaint, R.1, PageID 5. By "outlin[ing] the factual basis for [her] conclusion"—the photo—Councilwoman Lewis's interpretation of it is not actionable. *See Sarkar*, 897 N.W.2d at 226 & n.18.

*Knutson* illustrates this principle. The defendant in *Knutson* called the plaintiff's business "illegal" and claimed that the plaintiff had not obtained necessary approvals from the township. 2023 WL 5988457, at *5. But because the defendant had "provided a factual basis" for his statement, the Michigan Court of Appeals held that "no reasonable listener" would interpret it as "anything more than [an] opinion." *Id.* Such is the case here: in the context of a statement

criticizing members of the Flint City Council, no reasonable reader could interpret Councilwoman Lewis's post as anything more than an opinion about Lento's relationship with the Flint City Council that was based on an interpretation of the available information.

All told, the forum, the phrasing and language of the post, and the fact that Councilwoman Lewis shared the factual basis for her interpretation lead us to conclude that the post is not actionable as defamation.

### III.    Pohly's Statement

As with Councilwoman Lewis's post, we hold that Pohly's statement regarding Lento's city council attendance is not actionable as defamation. Lento takes issue with the first line of Pohly's statement, where Pohly replied to Rennie Lee's question whether Lento attended Flint City Council meetings to arrange lawsuits by stating: "[Y]es, that's why they are there." Complaint, R.1, PageID 8. Lento argues that this line of Pohly's post "states and implies that [Lento] attends Flint City Council meetings to induce people to bring lawsuits against the City of Flint." Appellant Br. at 14. But this statement constitutes an opinion, not an assertion or implication of provable fact, so it is not defamatory.

Taken in context, Pohly's response to Rennie Lee is a subjective assessment of Lento's behavior. And if a statement is a "subjective assessment that will vary with each individual opinion," then it "cannot reasonably be interpreted as stating actual facts about [the] plaintiff." *Haney*, 2010 WL 4864812, at \*6. The statements at issue in *Haney* furnish a persuasive comparison. There, the defendant stated that the plaintiff's organization was merely "a cover for a high-pressure sales organization" and was "prey[ing] upon" the defendant's parish. *Id.* The Michigan Court of Appeals explained that these statements about the purpose of plaintiff's organization were a "subjective assertion" and therefore nonactionable. *Id.* Like the defendant in

*Haney*, Pohly expressed her opinion about a business's motive. Pohly did not assert that she had any actual personal knowledge of Lento's motive beyond publicly available information. In the context of a Facebook group dedicated to Flint's local politics, no reasonable viewer could read Pohly's statement as anything more than a personal assessment of Lento's motives for attending Flint City Council meetings.

Lento further objects to Pohly's post by claiming it insinuates that Lento is "essentially an 'ambulance chaser.'" Appellant Br. at 14. While we understand that the post conveys a negative opinion of Lento, we note that even if Pohly's post had directly called Lento an ambulance chaser, that term standing alone would likely not be actionable in the context of a Facebook group. A reasonable reader would understand the term "ambulance chaser" to be a statement of opinion— no worse than a generic assertion that someone is a "crook" or a "criminal." *See Ghanam*, 845 N.W.2d at 144. "Casual use" of these terms is not actionable under Michigan law. *Id.* While claiming someone is an ambulance chaser may be an affront, even statements which are designed to be "highly offensive" are not actionable without an assertion of factual truth. *Id.*

## CONCLUSION

We affirm the district court's dismissal of Lento's defamation claims against Lewis and Pohly.